UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

STEWART D. BROWN,

                      Plaintiff,

v.                                                                Case No. 20-cv-1521-bhl

DR. JAMES CRAULEY and
AGNESIAN HEALTHCARE HOSPITAL,

                      Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE (ECF NO. 2), DENYING PLAINTIFF'S MOTION FOR RECRUITMENT OF COUNSEL (ECF NO. 10), AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

       Stewart D. Brown, an inmate at John C. Burke Correctional Center who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that a hospital doctor used inappropriate language while examining him. This decision resolves Brown's motion for leave to proceed without prepaying the filing fee (ECF No. 2) and his motion for recruitment of counsel (ECF No. 10), and screens his complaint (ECF No. 1).

**Motion for Leave to Proceed without Prepaying the Filing Fee**

       The Prison Litigation Reform Act (PLRA) applies to this case because Brown was a prisoner when he filed his complaint. *See* 28 U.S.C. §1915(h). The PLRA allows the Court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

       On October 5, 2020, the Court ordered Brown to pay an initial partial filing fee of $31.83. (ECF No. 5.) On November 23, 2020, after the Court provided Brown additional time to pay the fee, Brown paid it. The Court will grant Brown's motion for leave to proceed without prepaying

the filing fee. He must pay the remainder of the filing fee over time in the manner explained at the end of this order.

## Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

A "frivolous" complaint "lack[s] an arguable basis either in law or fact." *Felton v. City of Chicago*, 827 F.3d 632, 635 (7th Cir. 2016) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). A complaint is factually frivolous if its allegations are "clearly baseless," "fanciful," "fantastic," "delusional," "irrational," or "wholly incredible." *Id.* (quoting *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992)). Allegations that are merely "unlikely," "improbable," or "strange," do not meet this standard. *Id.* (quoting *Denton*, 504 U.S. at 33). A claim is legally frivolous if it is "based on an indisputably meritless legal theory." *Id.* (quoting *Neitzke*, 490 U.S. at 327–28).

In determining whether the complaint states a claim, the Court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*,

570 F.3d 824, 827 (7th Cir. 2009)).  The Court construes liberally complaints filed by plaintiffs who are representing themselves.  *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### B. Background Allegations

Brown was an inmate at Kettle Moraine Correctional Institution (KMCI) at the time of the events alleged in this lawsuit.  (ECF No. 1 at 2.)  Brown alleges that on October 21, 2019, he was sent to the Agnesian Healthcare Urology Department for an appointment with Doctor James Crauley regarding Brown's prostate cancer.  (*Id.*)  Two correctional officers (who are not defendants) escorted Brown to his appointment.  (*Id.*)  During the appointment, Dr. Crauley directed Brown to drop his pants so the doctor could insert a camera into Brown's anus.  (*Id.*)  Dr. Crauley told Brown that the camera "is going to hurt going in" but that once it was inside, "you'll be okay."  (*Id.* at 2, 4.)  Brown responded, "[Y]eah I know, just get it over with."  (*Id.* at 4.)  To that, Dr. Crauley allegedly responded, "[A]t least it's not a penis!"  (*Id.*)  The two correctional officers began to laugh and commented on Brown's face turning red.  (*Id.*)  Brown states that he felt humiliated and violated but allowed the appointment to continue so he could learn the status of his cancer.  (*Id.*)

Brown states that Dr. Crauley's comment made him depressed, stressed, and sick.  (ECF No. 1 at 4.)  Despite Brown expressing his discomfort, KMCI will not allow Brown to see a different urologist and told him Dr. Crauley is the only one available.  (*Id.*)  Brown has not seen Dr. Crauley since July 22, 2020 and refused his last appointment because of Dr. Crauley's earlier comment.  (*Id.* at 3.)  Brown states he is not comfortable having Dr. Crauley examine him and is afraid of what else he might say.  (*Id.*)  Because he refuses to see Dr. Crauley, Brown does not know the current status of his prostate cancer and whether it has spread.  (*Id.*)  He has suffered bad dreams, insomnia, depression, and stress. (*Id.*)  Brown seeks damages against Dr. Crauley and the Agnesian Healthcare Hospital.  (*Id.* at 6.)

### C. Analysis

Brown's allegations against Dr. Crauley amount to a claim challenging the conditions of his confinement.  Under the Eighth Amendment, a state may not subject prisoners "to conditions of confinement amounting to cruel and unusual punishment."  *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019) (citing *Rhodes v. Chapman*, 452 U.S. 337, 345–47 (1981).  The Supreme Court has clarified, however, that only "extreme deprivations" amount to cruel and unusual

conditions of confinement. *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). The Court must judge the alleged conditions "in accordance with contemporary standards of decency." *Id.* (citing *Hudson*, 503 U.S. at 8, and *Rhodes*, 452 U.S. at 346).

An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In the context of a conditions-of-confinement claim, a prisoner must show that he has been deprived of "'the minimal civilized measure of life's necessities.'" *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes*, 452 U.S. at 347). The subjective component requires a prisoner to demonstrate that prison officials acted with the requisite intent, that is, that the officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303.

Brown's claim has several problems. First, a suit under §1983 may be brought only against persons who acted "under color of state law." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822 (7th Cir. 2009). A private party may act under color of state law only when the party "acted together with . . . obtained significant aid from state officials" and did so to such a degree that its actions may properly be characterized as "state action." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

It is not clear from the complaint that Dr. Crauley acted under color of state law when he treated Brown. But even if he was, and Dr. Crauley is a proper defendant in this lawsuit, it is well settled that verbal abuse or harassment does not violation the Constitution. "Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws." *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("The use of derogatory language, while unprofessional and deplorable, does not violate the Constitution."), *abrogated in part on different grounds by Savory v. Cannon*, 947 F.3d 409, 423–24 (7th Cir. 2020) (en banc). If made, Dr. Crauley's comment was inappropriate and unprofessional. But it does not rise to the level of an "extreme deprivation" sufficient to constitute a violation of Brown's Eighth Amendment rights.

Brown also seeks to hold Agnesian Healthcare liable as Dr. Crauley's employer. Again assuming Agnesian Healthcare could be considered a state actor, a private corporation (like Agnesian Healthcare) that has contracted to provide essential government services, such as health care for prisoners, "cannot be held liable under § 1983 unless the constitutional violation

was caused by an unconstitutional policy or custom of the corporation itself." *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014). A private corporation may not be held liable for the actions of its employees under a theory of *respondeat superior*. *Id.* (citing *Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982)); *see also Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Brown instead must allege "that his injury was caused by a [corporation] policy, custom, or practice of deliberate indifference . . . or a series of bad acts that together raise the inference of such a policy." *Shields*, 746 F.3d at 796 (citing *Woodward v. Corr. Med. Servs. of Illinois, Inc.*, 368 F.3d 917, 927 (7th Cir. 2004)). Brown does not do that. And, of course, even if he had, because Dr. Crauley's comments did not violate Brown's rights, Agnesian Healthcare could not be liable either. *See Montague v. Wexford Health Sources, Inc.*, 615 F. App'x 378, 379 (7th Cir. 2015) (citing *City of Los Angeles v. Heller*, 475 U.S. 796 (1986)) (explaining that because the "individual defendants all prevailed . . . there is no constitutional tort for which [the private employer] could be vicariously liable").

Brown also moves for recruitment of counsel. (ECF No. 10.) Because the Court is dismissing this case, the Court will deny his request for counsel as moot.

## Conclusion

The Court **GRANTS** Brown's motion for leave to proceed without prepaying the filing fee. (ECF No. 2.)

The Court **DENIES** as moot Brown's motion for recruitment of counsel. (ECF No. 10.)

The Court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim and is frivolous. The Court will enter judgment accordingly.

The Court will document that Brown has incurred a "strike" under 28 U.S.C. §1915(g).

The Court **ORDERS** that the agency that has custody of Brown shall collect from his institution trust account the $318.17 balance of the filing fee by collecting monthly payments from Brown's prison trust account in an amount equal to 20% of the preceding month's income credited to Brown's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If Brown transfers to another county, state or federal institution, the transferring institution shall forward a copy of this order, along with Brown's remaining balance, to the receiving institution.

The Court will send a copy of this order to the officer in charge of the agency where Brown is confined.

The Court will email a copy of this order to DLSFedOrdersEastCL@doj.state.wi.us.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within thirty days of the entry of judgment. *See* Fed. R. App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within twenty-eight days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2).

The Court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 18th day of December, 2020.

BY THE COURT:

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge